**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **In re:** | |
| **DAVID GILBERT CALARESE,** | **Chapter 7** |
| | **Case No. 22-11647-JEB** |
| **Debtor** | |

**MEMORANDUM OF DECISION**

This matter came before the Court on the *Motion to Establish Value of Real Property and Avoid Judicial Liens* ("Motion") filed by the Debtor, David Gilbert Calarese. By the Motion, pursuant to Section 522(f) of the Code, the Debtor sought to avoid certain judicial liens, including a lien held by GSGC 2, LLC ("GSGC2") against the property owned by the Debtor at 81 Cove Road, South Dennis Massachusetts ("Property"). GSGC2 opposed the Motion and asserted that the lien of GSGC2 could only be avoided in part based on the value of the Property. The Court held an evidentiary hearing on the Motion.

For the reasons set forth below, the Court finds that the value of the Property was $1,865,000 as of the commencement of the bankruptcy. Based on the value of the Property, the lien of GSGC2 will be avoided in part to the extent of $2,608,541.43. Accordingly, GSGC2 will retain a lien in the amount of $505,000.

This Memorandum of Decision constitutes the findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a), made applicable to this proceeding by Fed. R. Bankr. P. 7052. The findings set forth in this Memorandum are based on the record as a whole and may be supported by testimony and exhibits that are not specifically cited. Any finding of fact deemed a conclusion of law is adopted as such, and vice versa. The Court has not included facts that are

not relevant to this decision. The Court has also not reconciled minor discrepancies, unless material or relevant to the rulings.

**JURISDICTION**

The Court has jurisdiction regarding this matter since it arises under Section 522(f) of the Code. Under Section 1334(b) of title 28, the district courts have jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11," subject to exceptions not applicable here. 28 U.S.C. § 1334(b). By a standing order of reference in accordance with Section 157(a) of title 28, the district court in this district has referred all cases under title 11 and any proceedings arising under, arising in, or related to cases under title 11, to the bankruptcy court. *See* 28 U.S.C. § 157(a). Matters regarding the allowance of exemptions and the determination of the extent of liens are core proceedings in bankruptcy. 28 U.S.C. § 157(b)(2)(B) and (K). Accordingly, this Court may hear and finally determine this matter.

**OVERVIEW AND BACKGROUND**

On November 13, 2022, the Debtor commenced these bankruptcy proceedings under Chapter 7 of the Code. As of the petition date, the Debtor owned the Property as sole owner. Prior to the commencement of the bankruptcy, on November 10, 2022, the Debtor recorded an Elderly Declaration of Homestead in the amount of $500,000.

Pursuant to the Motion, the Debtor sought (i) to determine the value of the Property at $1,250,000, (ii) to avoid a judicial lien held by Sompo International Allexion Holdings LTD ("Sompo") in the amount of $254,566 in its entirety since it impaired the Debtor's homestead exemption, and (iii) to avoid a judicial lien held by GSGC2 in the amount of $3,113,541.43 ("GSGC2 Lien") in its entirety since it impaired the Debtor's homestead exemption. GSGC2 filed an opposition to the Motion, disputing the value of the Property. GSGC2 asserted that the

value of the Property as of the petition date was $2,250,000. As a result, GSGC2 asserted that the GSGC2 Lien was avoidable only in part, with a remaining lien of $950,000. Sompo did not file a response to the Motion.

After an initial hearing, the Court granted the Motion in part avoiding the lien by Sompo in its entirety, since the lien was junior to the GSGC2 Lien. The Debtor and GSGC2 engaged in limited discovery. They filed a Joint Pretrial Memorandum and stipulated to certain facts, leaving value of the Property as the only issue to be determined at an evidentiary hearing. The Debtor and GSGC2 agreed to the following facts for the purposes of the Motion:

a. As of the petition date, the Property was subject to a first mortgage held by PHH Mortgage Services in the amount of $860,000. The PHH Mortgage is senior to the GSGC2 Lien.

b. The other liens and mortgages against the Property had been voided by prepetition litigation or avoided by the order of the Court.

c. The Debtor has a valid homestead in the amount of $500,000, which has priority over the GSGC2 Lien.

d. The GSGC2 Lien is a judicial lien that can be avoided in whole or in part under Section 522(f) of the Code.

e The GSGC2 Lien is secured only to the extent the value of the Property exceeds $1,360,000.

f. The Property is a single-family residence with three bedrooms and three and a half baths. It was built in 1986 and is located on the Bass River in South Dennis, Massachusetts.

The parties each submitted an appraisal of the Property and both appraisals were admitted

as agreed exhibits at trial. Both appraisals provided a value of the Property based on the sales comparison approach. Each appraiser selected three sales for properties that they deemed comparable to the Property. The appraiser then made adjustments to the sale price to reflect the differences of the respective comparable property and the Property. After applying the aggregate adjustments, the appraiser reached a conclusion of the adjusted sale price for the Property based on such sale. The appraiser then provided an opinion on the value of the Property after considering the various adjusted sale prices determined based on the comparables.

The Debtor submitted an appraisal of the Property as of November 5, 2022, performed by John Dellasanta of Howard S. Dono & Associates, Inc. ("Debtor Appraisal"). Howard S. Dono, signed as supervisory appraiser on the Debtor Appraisal. Dellasanta concluded that the value of the Property as of November 5, 2022, was $1,250,000. In his appraisal, Dellasanta listed the Property as having 3,088 square feet above grade, with seven rooms, including three bedrooms and three and a half baths. He also noted that there was a room over the garage used as a family room or bedroom that was not included in the bedroom count. Dellasanta included information on a finished basement, which he listed at 1,816 square feet with a separate entrance. The basement included additional rooms not listed in the above room count, consisting of a summer kitchen, full bath, and two rec rooms. Dellasanta noted that the Property had waterfrontage on the Bass River, several rear decks, a patio, and a two-car attached garage.

Dellasanta considered the following three properties as comparables:

a. 34 Cove Road, South Dennis, Massachusetts ("34 Cove Property"), located on the same road as the Property, but on the opposite side and further inland. The 34 Cove Property sold for $1,215,000 on February 28, 2022. Dellasanta listed the 34 Cove Property as having 2,004 square feet above grade, with six total rooms,

three bedrooms and two and a half baths. He also noted there was a full or partially finished basement with two rec rooms. Dellasanta considered aggregate upward adjustments of $74,200 were appropriate to reflect the differences from the Property. The aggregate adjustments of $74,200 consisted of an adjustment of $54,200 for the difference in square footage above grade (at $50.00 per square feet), $10,000 for the additional full bath above grade, and $10,000 for the additional full bath in the basement. Based on the 34 Cove Property, Dellasanta concluded that the Property would have an adjusted sale price of $1,289,200.

b. 8 Winston Path, South Dennis, Massachusetts ("Winston Property"), located on a fresh water pond in the same town as the Property. The Winston Property sold for $1,155,000 on June 16, 2022. Dellasanta listed the Winston Property as having 3,079 square feet above grade, with six total rooms, three bedrooms and two and a half baths. He also noted that the Winston Property had a full or partially finished basement with two rec rooms. Dellasanta considered aggregate upward adjustments of $33,000 were appropriate to reflect the differences from the Property. The aggregate adjustments of $33,000 were based on several individual adjustments, including an adjustment of $10,000 for the pond versus river location. Based on the Winston Property, Dellasanta concluded that the Property would have an adjusted sale price of $1,189,000.

c. 17 Love Lane, South Dennis, Massachusetts, ("Love Lane Property") located on a fresh water pond in the same town as the Property. The Love Lane Property sold for $1,250,000 on June 17, 2022. Dellasanta listed the Love Lane Property as having 3,079 square feet above grade, with six total rooms, four bedrooms and

two baths and no finished basement. Dellasanta considered aggregate upward adjustments of $59,000 were appropriate to reflect the differences from the Property. The aggregate adjustments of $59,800 were based on numerous individual adjustments, including an adjustment of $10,000 for the pond versus river location. Based on the Love Lane Property, Dellasanta concluded that the Property would have an adjusted sale price of $1,309,000.

GSGC2 submitted an appraisal of the Property as of November 13, 2022, performed by Linda Coneen of Cape Code Appraisal Partners ("GSGC2 Appraisal"). Coneen concluded that the value of the Property as of November 13, 2022, was $2,250,000. In her appraisal, Dellasanta listed the Property as having 3,214 square feet above grade, with eight rooms, including three bedrooms and three and a half baths. She also noted that there was a family room over the garage used as a bedroom but not included in the bedroom count. Coneen listed the finished basement with 686 square feet of finished space and 1,106 square feet used for utilities. Coneen considered the basement to be an apartment with the second kitchen, one bedroom and one bath. Coneen also mentioned the outside amenities, including the decks, balcony, patio, and two-car attached garage. Coneen highlighted that the Property had views and frontage on Grand Cove, a marshy inlet of Bass River.

Coneen considered the following three properties as comparables:

a. The 34 Cove Property. Coneen also noted the features discussed above in connection with the Debtor Appraisal. Coneen considered aggregate upward adjustments of $1,011,775 were appropriate to consider the differences from the Property. The adjustments made by Conneen were more extensive in number and scope. She included significant adjustments for the timing of the sale, the

location, the square footage, and the basement. Based on the 34 Cove Property, Coneen concluded that the Property would have an adjusted sale price of $2,226,775.

b. 10 Wheatfield Lane, West Dennis, Massachusetts ("Wheatfield Lane Property") also located on the Bass River in the next town. The Wheatfield Lane Property sold for $3,325,000 on September 1, 2021. Coneen listed the Wheatfield Lane Property as a custom contemporary, with deep water access and a dock. Coneen considered aggregate downward adjustments of $1,039,400 were appropriate to consider the differences from the Property. The aggregate adjustments included over 10 different individual adjustments in significant amounts. Based on the Wheatfield Lane Property, Coneen concluded that the Property would have an adjusted sale price of $2,285,600.

c. 177 River Street, South Yarmouth, Massachusetts ("River Street Property") located on the Bass River but close to Nantucket Sound. The River Street Property sold for $4,184,870 on December 15, 2020. The River Street Property has panoramic views and waterfront, and included both a dock and a separate guest house. Coneen considered aggregate downward adjustments of $1,942,756 were appropriate to consider the differences from the Property. The aggregate adjustments included over 12 individual adjustments that were in excess of $100,000. Based on the River Street Property, Coneen concluded that the Property would have an adjusted sale price of $2,242,114.

In addition to the appraisals, the agreed exhibits included a sales listing for a property located at 72 Cove Road, Dennis, Massachusetts ("72 Cove Property"). The 72 Cove Property

was a waterfront property with views of Grand Cove close to the Property, but on the opposite side of the road. The listing reflected that a sale of the 72 Cove Property occurred on June 5, 2023, for $1,150,000. The 72 Cove Property was listed as having 2,100 square feet above grade with eight rooms, including three bedrooms and two and a half baths. The 72 Cove Property did not have a finished basement.

The exhibits also included a biography of the Debtor and a report prepared by the Debtor ("Calarese Report") regarding necessary repairs that a buyer would require. The Calarese Report listed approximately $414,400 for repairs, including $40,000 as a contingency for unknown defects. The Calarese Report included invoices for some of the projected repairs, but not all.

At the evidentiary hearing, three witnesses testified: the Debtor, Dono, and Coneen. In addition to the exhibits discussed above, the parties submitted five additional agreed exhibits. During the evidentiary hearing, two additional exhibits were admitted.

At the hearing, the Debtor testified regarding the Property and his experience. The Debtor testified to his prior experience in residential and commercial construction. He testified that he currently holds a construction supervisor license and a hoisting license, which enables him to operate heavy machinery. The Debtor admitted that he did not currently have a general contractor license. He also acknowledged that he had not been involved in the building trade for about 15 years.

The Debtor testified regarding the repairs he listed in the Calarese Report, including the rationale for the repairs and the basis for the amounts listed. He testified that he had discussed several of the potential repairs with the appraisers when they viewed the Property. The Debtor admitted that he did not know how the repairs affected the value of the Property and considered that an issue for the appraiser.

The Debtor testified regarding the basement, which includes a second kitchen, two additional rooms, and a bath. The Debtor stated that he did not believe the second room in the basement qualified as a bedroom since there was not a separate door or a closet. The Debtor acknowledged that he obtained a permit from the town to rent the basement during the summer for a few summers. He acknowledged that the rent was at least $6,000 to $8,000 for three months and could be more depending on the length of stay.

Dono testified as an expert witness for the Debtor. Although Dono had not prepared the Debtor Appraisal, he was the supervisory appraiser on the report. He also visited the Property after the Debtor Appraisal was prepared. Dono testified that the three comparable sales in the Debtor Appraisal were chosen for comparable water views. He testified that the adjusted sales price of the 34 Cove Property was given the most weight, since it was on the same street and same body of water. He also testified that the other two comparable properties were given limited weight because they were not on the same body of water. Dono testified that although the 72 Cove Property was not included in the comparables, he considered that property to provide confidence for their valuation.

Dono testified that the adjustments for each of the comparables were based on Dellasanta's experience and judgment. Given that, Dono did not know how Dellasanta reached particular values for the adjustments.

Dono also testified regarding the GSGC2 Appraisal. He did not consider the second and third comparables in the GSGC2 Appraisal to be applicable, given that both had deep water access and docks. Dono testified that the key attribute for someone seeking boat access would be a dock and deep water access, which the Property did not have.

Coneen testified as an expert witness for GSGC2. She testified regarding the comparables

chosen for the GSGC2 Appraisal and discussed the adjustments. Coneen stated that important adjustments were based on a "paired sale" analysis maintained by her office. This analysis involved finding properties with the particular characteristic, such as a dock, and comparing them to similar properties without the characteristic, then adjusting to isolate only that difference. She testified that her office regularly updated such information to use for appraisals.

Coneen testified regarding the adjustments she made to the 34 Cove Property sale price and her basis for the adjustments. One adjustment she discussed was the adjustment of $300,000 for the location, despite being on the same street. Coneen testified that the 34 Cove Property faced different and less desirable inlet of the Bass River, known as Nickerson Cove. She also testified that the water frontage of 34 Cove Property was not comparable to the Property since it was limited to a small easement to access the water.

Coneen also discussed the Wheatfield Lane Property and the River Street Property and acknowledged the significant adjustments made. She testified that she chose the River Street Property because three properties were needed, although it was an uber luxury property. Coneen admitted that this property was given the least amount of weight during the appraisal process due to the disparity in features evidenced by the substantial downward adjustments.

Coneen also testified that the other comparables in the Debtor Appraisal were inappropriate. She testified that freshwater properties are not comparable to saltwater properties when it comes to Cape Cod real estate. Coneen also disagreed with the small adjustments made in the Debtor Appraisal, stating that the amounts did not adequately reflect the magnitude of the differences.

**APPLICABLE LAW**

Under Section 522(f)(1) of the Code, a debtor may avoid a judicial lien that impairs an

exemption. 11 U.S.C. § 522(f)(1). To avoid a judicial lien the Court must determine: (i) whether the debtor is entitled to an exemption; (ii) the extent to which the lien may be avoided; and (iii) whether the lien does in fact impair the exemption. *In re Tinker*, 355 B.R. 380, 382-83 (Bankr. D. Mass. 2006). A lien impairs an exemption if the sum of the lien, all other liens, and the amount of the exemption exceeds the value of the debtor's interest in the property. 11 U.S.C. § 522(f)(2). If there is more than one lien, any previously avoided liens are not considered in the calculation. *Id.* Value of the property is the fair market value as of the date of the petition. 11 U.S. C. § 522(a)(2). The Debtor has the burden of proving all elements, including the value of the property, to avoid the judicial liens under Section 522(f) of the Code. *In re DeCarolis*, 259 B.R. 467, 471 (B.A.P. 1st Cir. 2001). The Debtor must prove those elements by a preponderance of the evidence. *In re Garcia*, 532 B.R. 173, 183 (B.A.P. 1st Cir. 2015).

**ANALYSIS**

As more fully set forth below, the Court finds that the value of the Property was $1,865,000 as of the petition date. Accordingly, based on the stipulations of the parties, the GSGC2 Lien will be avoided in part, to the extent it exceeds $505,000.

In determining the value of the Property, the Court has considered the appraisals, the testimony, the other evidence submitted at trial, and the Court's experience and judgment. The Court finds that the 34 Cove Property sale is the most appropriate comparable sale, subject to an upward adjustment of $650,000. As detailed below, the Court considered four areas of adjustment: (i) $300,000 for the difference in waterfrontage and location; (ii) $100,000 for the difference in the time period of the sale; (iii) $150,000 for the difference in square footage above grade; and (iv) $100,000 for the difference in the basement rooms and attributes. The Court finds that the other comparables in both the Debtor Appraisal and the GSGC2 Appraisal were too

dissimilar to provide sufficient information for comparison. Finally, the Court finds that the repairs listed by the Debtor are not relevant to the valuation of the Property.

**1. 34 Cove Property Comparison**

The Court finds the 34 Cove Property is the most appropriate sale comparison. The 34 Cove Property is located on the same street, with waterfront views of a similar, but smaller inlet of the Bass River. Although they differed on the adjustments to be made, both Dono and Coneen agreed that 34 Cove Property was the best comparison.

The Court finds that an upward adjustment of $300,000, as proposed by Coneen, is appropriate to account for the difference in water frontage and views. The Court finds that the adjustment by Coneen was well supported by her testimony and the other evidence. In contrast to the Property, the 34 Cove Property has limited waterfront access, based only on a narrow easement. The 34 Cove Property is further inland and on a different inlet, which Coneen testified was a less desirable location. Coneen has extensive experience in appraising property on the Cape and waterfront properties in particular. The Court found her testimony to be credible and the proposed adjustment to be well supported.

The Court finds that the adjustment for location and waterfrontage is supported by the tax assessment records. Although tax assessments do not necessarily reflect fair market value, the Court finds that the relative values can provide insight. The 34 Cove Property had a 2022 tax assessment of $1,002,100, consisting of $595,600 for the building and $406,500 for the land. The Property had a 2022 tax assessment value of $1,671,300, consisting of $1,036,400 for the building and $634,900 for the land. Based on those values, the land portion of the Property was valued at least $228,000 higher than the 34 Cove Property. The foregoing does not account for the subjective factors identified by Coneen regarding the nature of the body of water and the

quality of access. Considering the testimony and the evidence as a whole, the adjustment of $300,000 is supported.

The Court finds that an upward adjustment of $150,000 is appropriate to account for the difference in square footage, relying on the adjustment in the GSGC2 Appraisal. Both appraisers acknowledged that the Property was at least 1,000 square feet larger than the 34 Cove Property. Coneen used an adjustment of $125 per square foot. She testified credibly that the adjustment was modest in light of the new home construction costs of $400 to $500 per square foot. Dono also agreed that the cost of new home construction on the Cape began at $250 per square foot and could be as high as $400 or $500 per square foot. He was unable to explain the choice of $50 per square feet made by Dellasanta. The adjustment of $150,000, approximately 12% of the sale price, is reasonable for a property that is 33% larger, with more than 1,000 additional square feet.

The Court finds that an upward adjustment of $100,000 is appropriate to reflect the difference in timing. Both appraisers noted the fluctuation in the real estate market on the Cape during 2020, 2021, and 2022. Although Dono testified that the market was stable in 2022, the average sales values reported in the Debtor Appraisal reflected significant changes by quarter. In the GSGC2 Appraisal, Coneen relied on median sales values to determine an increase from the sale date of the 34 Cove Property to the petition date. No adjustment was made in the Debtor Appraisal. The Court applied the rate of 11.4% determined by Coneen, prorated for the eight months between the sale of the 34 Cove Property on February 28, 2022 and the petition date

The Court finds that an upward adjustment of $100,000 is appropriate to reflect the difference in the basement space of the properties. The finished basement in the 34 Cove Property consists of two rooms with approximately 1,020 square feet. While the finished

basement in the Property is smaller at 686 square feet, it includes a kitchen and a full bath. Coneen used an adjustment of $125,000, considering the basement to be an apartment. But as noted by Dono and in the appraisals, the Property is zoned as a single-family home. While the Court declines to consider the basement an apartment, the Court does consider the amenities to be significant. The Debtor testified that he had obtained a permit from the town for seasonal summer rentals that had resulted in income of at least $6,000 to $8,000. Consequently, the Court finds a significant adjustment is appropriate, but not the full amount proposed in the GSGC2 Appraisal.

In comparing the Property and the 34 Cove Property, the Court finds that no adjustment is warranted for flood zone insurance. The GCGS2 Appraisal included an upward adjustment of $225,000, on the basis that the 34 Cove Property required flood zone insurance while the Property does not. Coneen testified that required flood zone insurance negatively impacts the price of a property because of its high cost. However, the listing report for the 34 Cove Property stated that no flood insurance was required. Coneen admitted that no flood insurance may be required if a portion of the lot, but not the building, was in the flood zone. Given the direct contradiction in the report, the Court declines to include an adjustment.

The Court also declines to consider the other adjustments offered by the appraisers. The Court did not find the distinction for construction quality of $50,000 in the GSGC2 well supported. Both appraisers also made an adjustment for an additional full bath, Dellasanta for $10,000 and Coneen for $25,000.[1] Given the small magnitude of these adjustments, the Court considered them absorbed in the prior adjustments made.

---

[1] The listing agreement for the 34 Cove Property shows the property has two and a half baths compared to the three and a half baths above grade at the Property. Accordingly, the additional half bath adjustment by Coneen was not supported.

**2. The Other Comparables**

The Court declined to consider the other comparable sales listed by Dellasanta, considering them too disparate from the Property. Both the Winston Property and the Love Lane Property were located on small ponds, not on the Bass River. Both had limited waterfront views. In addition, the Love Lane Property had substantial deed restrictions which would depress the sale price.

The Court also declines to consider the comparables listed by Coneen. The Wheatfield Lane Property had significant additional features, including a dock and boathouse, that do not exist on the Property. The sale of the Wheatfield Lane Property required numerous substantial adjustments. The River Street Property also required extensive and substantial adjustments, including two individual adjustments of more than $1,000,000. Coneen admitted the luxurious River Street Property was not a good comparison. Given the disparate features for both of these comparables, the Court declines to consider them.

Finally, the Court has insufficient information to consider the 72 Cove Property, since there is only the listing sheet. Based on the listing, however, the Court believes that the sale price of the 72 Cove Property supports the valuation determined by the Court. The 72 Cove Property had similar square footage above grade to the 34 Cove Property. It also has no finished basement. Both of those would warrant significant adjustments of the $1,150,000 sale price. As a result, the suggestion that the sale price of 72 Cove Property is similar to the Property is not warranted.

**3. The Repairs**

The Court declines to consider the repairs listed in the Calarese Report as an adjustment to the value. The Court also declines to find that the Debtor is an expert for such purposes, but

accepts the values as an opinion by the homeowner. Although the Debtor previously worked in residential construction, he admitted that he had not done so for at least 15 years. His explanation for repairs, including a $40,000 contingency amount, also undercuts the credibility of the amounts proposed. In addition, however, the repairs have no impact on the valuation. t since he had done so he current condition of the Property was considered as part of the appraisals. Both appraisers inspected the Property. During the inspections, the Debtor advised each appraiser of several of the issues raised in the Calarese Report.

**CONCLUSION**

For the foregoing reasons, the Court finds that the fair market value of the Property as of the petition date was $1,865,000. Accordingly, the GSGC2 Lien will be avoided in part, leaving a remaining lien of $505,000.

Dated: September 30, 2026

By the Court,

____________________________
Janet E. Bostwick
United States Bankruptcy Judge